UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x
In re XM SATELLITE RADIO COPYRIGHT LITIGATION

                                    MASTER DOCKET
                                    06 Civ. 3733 (LAK)

This Document Relates to:    07 Civ. 4682 (LAK)
-------------------------------------------------------------------------x

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' AND CLASS COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND <u>CLASS REPRESENTATIVE INCENTIVE AWARDS</u>**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...........................................................................1

I.      CLASS COUNSEL'S EFFORTS RESULTED IN THE CREATION
          OF A $5,377,177 COMMON FUND AND OTHER SUBSANTIAL
          BENEFITS TO THE SETTLEMENT CLASSES ...........................................2

II.     ARGUMENT .............................................................................................4

      A.     The Established Methods of Determining The Amount of
            Attorneys' Fees In Common Fund Cases ................................................5

      B.     The Requested Fee Is Fair and Reasonable Based On All Six
            "Goldberger" Factors ...........................................................................6

            1.     "The Time And Labor Expended By Counsel" ...............................6

            2.     "The Magnitude And Complexities Of The Litigation" ..............7

            3.     "The Risk Of The Litigation…" ...................................................7

                  a.     Risk of Non-Payment .....................................................7

                 b.     Risks of Certifying the Settlement Classes ....................8

                 c.     Risks of Establishing Liability .......................................8

             4.     "The Quality Of Representation" ..................................................8

            5.     "The Requested Fee In Relation To The Settlement" .................9

            6.     "Public Policy Considerations" ..................................................10

      C.     The Requested Fee Is Fair and Reasonable Under A Percentage
            of the Fund Analysis .............................................................................11

      D.     The Requested Fee is Fair and Reasonable Under The Lodestar
            "Cross Check" And The Lodestar Method Generally ...........................12

            1.     The Requested Fee is Also Reasonable Under
                the Lodestar "Cross Check" ........................................................12

2.    The Requested Lodestar Multiplier of, So Far, 1.01
Will Be A Negative Risk Multiplier By The Time
of The Fairness Hearing; This Is A Fair Risk Multiplier
and Is Well Below Lodestar Multipliers Deemed To
Be Fair and Reasonable In This Circuit.....................................................13

a.    Class Counsel's Hours Are Reasonable........................................14

b.    Class Counsel's Hourly Rates are Reasonable ............................14

III.    THE REQUESTED REIMBURSEMENT OF EXPENSES IS
REASONABLE AND SHOULD BE APPROVED .........................................15

IV.    THE REQUESTED INCENTIVE AWARDS FOR THE CLASS
REPRESENTATIVES ARE FAIR AND REASONABLE.............................16

CONCLUSION.......................................................................................................18

# TABLE OF AUTHORITIES

## Cases

*Arakis Energy Corp. Sec. Litig.*, 2001 WL 1590512 (E.D.N.Y. Oct. 31 2001) ......................... 14

*Berrios v. Sprint Corp.,* 97-0081, 1998 WL 1749828 (S.D.N.Y. Sept. 11, 1998)....................... 16

*Blum v. Stenson*, 465 U.S. 886 (1984) ..................................................................................... 13

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980)......................................................................... 2

*Cohen v. Apache Corp.*, No. 89 Civ. 0076, 1993 WL 126560 (S.D.N.Y. Apr. 21, 1993) ............ 9

*Dubin v. E.F. Hutton & Co.,* 878 F. Supp. 616 (S.D.N.Y. 1995) ................................................. 9

*Famous Music, LLC et al. v. XM Satellite Radio, Inc.*, 07-cv-02835 (S.D.N.Y.) ....................... 15

*Frank v. Eastman Kodak*, 228 F.R.D. 174 (W.D.N.Y. 2005)....................................................... 9

*Goldberger v. Integrated Resources, Inc.*, 209 F.3d 46 (2nd Cir. 2000) ............................... *passim*

*Green v. Emersons, Ltd.,* No. 76 Civ. 2178, 1987 WL 11558 (S.D.N.Y. May 20, 1987).............. 9

*Hicks v. Morgan Stanley*, 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ...................................... 9

*In re Baesa Sec. Litig.*, 96 Civ. 7435 (S.D.N.Y. Oct. 8, 1998) ....................................................... 9

*In re Buspirone Patent Litigation*, No. 01-MD-1410,
      slip op. at 41-43 (S.D.N.Y. Apr. 17, 2003)............................................................................. 11

*In re Crazy Eddie Sec. Litig.,* 824 F. Supp. 320 (E.D.N.Y. 1993)................................................ 9

*In re Franklin Nat'l Bank Sec. Litig.,* [1980 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 97,571
      at 97,988 (E.D.N.Y. June 24, 1980)......................................................................................... 9

*In re Lloyd's Am-Trust Fund Litig.*, 2002 U.S. Dist. LEXIS (S.D.N.Y. 2005) ............................ 11

*In re Medical X-Ray Film Antitrust Litig.*, CF 1998 WL 6615151 (E.D.N.Y. 1998).................... 9

*In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124 (S.D.N.Y. 2008) ......................... 8

*In re MTC Elec. Techs. Shareholder Litig.*, Master File No. 93-CV-0876,
      MDL No. 1059 (E.D.N.Y. Oct. 16, 1998) ................................................................................ 9

*In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465 (S.D.N.Y. 1998)................. 4, 11

*In re PaineWebber Sec. Litig.*, Civ. A. No. B-85-617 (D. Conn. Sept. 8, 1994)........................... 9
*In re Porta Sys. Corp. Sec. Litig.*, Master File No. 93 Civ. 1453 (E.D.N.Y. June 18, 1996)......... 9

*In re Presidential Life Sec.*, 857 F. Supp. 331 ( S.D.N.Y. 1994)..................................................... 9

*In re Prudential Securities, Inc. Ltd. Partnerships Litig.*, 912 F.Supp. 97 (S.D.N.Y. 1996) ... 8, 13

*In re Sumitomo Copper Litig.*, 74 F.Supp. 2d 393 (S.D.N.Y. 1999) ................................................ 4

*In re Union Carbide Corp. Consumer Prod. Business Sec. Litig.*,
    724 F. Supp. 160 (S.D.N.Y. 1989) ........................................................................................... 10

*Lemmer v. Golden Books Family Entm't, Inc.*, No. 98 Civ. 5748 (S.D.N.Y. Oct. 12, 1999)......... 9

*Maley v. Del Global Technologies Corp.*, 186 F. Supp. 2d 358 (S.D.N.Y. 2002) ............... 8, 9, 10

*Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 4223 (2d Cir. 2007) ................................. 11

*Maywalt v. Parker & Parsley Petroleum Co.*, 963 F. Supp. 310 (S.D.N.Y. 1997)....................... 9

*Michaels v. Ambassador Group, Inc.*, CV 84-2455 (E.D.N.Y. June 3, 1996)............................... 9

*Missouri v. Jenkins*, 491 U.S. 274 (1984)..................................................................................... 14

*New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136 (2d Cir. 1983)........ 14

*Spann v. AOL Time Warner*, 02 Civ. 8238 (DLC),
    2005 WL 1330937 (S.D.N.Y. Jan. 7, 2005) .............................................................................. 9

*Steiner, et. al. v. ABC, Inc., et al.*, Case No. CV-00-5798 (FMC) (C.D. Cal.) ............................ 16

*The Music Force LLC, et al. v. Viacom, Inc. et al.*, Case No. CV04-8239 (ER) (C.D. Cal.)....... 16

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005) ............................ 4, 11, 12

## Other Authorities

Andrew Ross Sorkin and Zachery Kouwe, *Sirius XM Prepares for Possible
    Bankruptcy*, N.Y. Times, February 10, 2009 .............................................................................. 7

United States Constitution, Article 1, Section 8 ............................................................................ 9

## PRELIMINARY STATEMENT

Plaintiffs and Class Counsel[1] respectfully submit this memorandum in support of their motion for (1) an award of attorneys' fees; (2) reimbursement of expenses reasonably incurred in the prosecution of this action; and (3) compensation to each class representative named Plaintiff for their time expended to further the prosecution of this action.

Specifically, Class Counsel requests an award of attorneys' fees in the amount of one-third of the common fund (not including administrative expenses) plus interest thereon (or $1,634,059 plus interest).[2]  See p. 10, fn. 7 *infra* (collecting numerous cases in this Circuit that have found one-third fees in common fund cases to be fair and reasonable).  It is anticipated that, as Class Counsel's work herein is ongoing, the requested fee award will result in a **negative** risk multiplier (*i.e.*, Class Counsel's lodestar will be greater than the amount of the requested fee) by the time of the March 22, 2011 fairness hearing.  See II.D.1-2 *infra*.

Similarly, Class Counsel also requests the reimbursement of reasonable expenses incurred in the prosecution of this action in an aggregate amount of $179,055.16.  See III *infra*. More than 80% of these expenses consisted of payments to contract attorneys and outside experts and consultants.  *Id*.

---

[1] "Class Counsel" refers to the following firms appointed by the Court as counsel for the Settlement Classes:  Lovell Stewart Halebian Jacobson LLP, Law Offices of Jeffrey L. Graubart, P.C., Law Offices of Joshua Graubart, P.C. and Steven J. D'Onofrio, Esq.  See Docket No. 112 at ¶4.

[2] In addition to creating the common fund of which Class Counsel is requesting a one-third fee, Class Counsel's work herein created the following additional benefits for the Settlement Classes: (1) $475,000 in class notice and administrative expenses; and (2) substantial remedial relief, including the discontinuation of certain objectionable functions on certain of XM's Recording Devices during the Term of the Settlement.  See I *infra*.

Thus, the requested fee represents significantly **less** than one-third of the benefits Class Counsel's work has conferred on the Settlement Classes.

Finally, a request is made for reimbursement and compensation to each class representative Plaintiff in the amount of $12,500 for the time and expense that they devoted to further the prosecution of the claims herein on behalf of the Settlement Classes.  See IV *infra*. This includes aiding the preparation of the complaint and amended complaints, providing Rule 26(a)(1) disclosures, responding to interrogatories, producing documents in response to Defendant's requests for production and otherwise assisting Class Counsel in analyzing the claims, defenses and issues in this action.  *Id.*

Notice of each of the foregoing requests was provided to members of the Settlement Classes.  The deadline for objections to the Settlement is March 2, 2011.  As of February 20, 2011 no objections to the Settlement had been filed.  In the event that objections are filed, Class Counsel will respond to such objections in a reply brief.

This motion is being made pursuant to and in accordance with the Court's December 6, 2010 Order Certifying Settlement Classes, Approving the Proposed Notice To The Class And Scheduling Hearing for Final Approval [Docket No. 112] and the terms of the Stipulation and Agreement of Settlement [Docket No. 109, Exhibit 1].[3]  This motion is further based upon Plaintiffs' Memorandum In Support of Motion For Final Approval of Class Action Settlement, the declaration of Christopher M. McGrath, Esq. ("McGrath Declaration"), the declarations of Class Counsel attached as exhibits to the McGrath Declaration and the other documents, pleadings and matters of record in this action.

I.      **CLASS COUNSEL'S EFFORTS RESULTED IN THE CREATION OF A $5,377,177 COMMON FUND AND OTHER SUBSANTIAL BENEFITS TO THE SETTLEMENT CLASSES[4]**

---

[3] Capitalized terms used herein are defined in the Stipulation and Agreement of Settlement.  See Docket No. Docket No. 109, Exhibit 1.
[4] The pertinent background facts of this action, including the allegations of Plaintiffs' Complaint, the procedural history herein and a summary of the material terms of the Settlement, were set

After more than three and one-half years of extensive discovery and vigorous settlement negotiations, Class Counsel's efforts herein resulted in the following substantial benefits to the independent record and publishing companies that comprise the Settlement Classes.

First, pursuant to the terms of the Settlement Agreement, XM deposited an initial payment of $5,377,177 into an escrow account consisting of: (1) $3,650,000 to the Sound Recording Settlement Class; (2) $300,000 for the administration of the Sound Recording Settlement Class; (3) $1,252,177 to the Musical Composition Settlement Class; and (4) $175,000 for the administration of the Musical Composition Settlement Class. See Stipulation of Settlement ¶¶53, 59-61.

Second, XM has agreed to make additional payments to the Musical Composition Settlement Class for additional Recording Devices that are activated after June 30, 2010 and before the end of the Term of the Settlement (*i.e.*, December 31, 2011). *Id*. Specifically, any further Recording Devices activated between July 1, 2010 and December 31, 2011 will result in additional payments of $2.35 for each Discontinued Unit and $0.78 or $0.93 for each Additional Recording Unit depending on its functionality. *Id*. at ¶60.

Third, XM has agreed to substantial remedial relief with respect to its Recording Devices, including discontinuing the use of the Disaggregation Function on certain of its Recording Devices during the Term of the Settlement. *Id*. Plaintiffs' Complaint alleged that the Disaggregation Function effectively transformed XM's satellite radio service into a digital download service thereby undermining Plaintiffs' ability to protect and profit from their intellectual property. Complaint ¶¶8, 10-13, 53-58.

---

forth in Plaintiffs' Memorandum In Support of Motion For Preliminary Approval of Class Action Settlement filed with the Court on November 15, 2010. See Docket No. 108 at pp. 3-11.

## II.    ARGUMENT

The Supreme Court has recognized that "…a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); see also *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 46, 47 (2nd Cir. 2000) ("*Goldberger*") (the common fund doctrine "prevents unjust enrichment of those benefiting from a lawsuit without contributing to its cost").

Class Counsel is requesting a fee in the amount of one-third of the common fund (exclusive of the $475,000 payment for administrative expenses).  Class Counsel is **not** requesting any fees in respect of the substantial remedial relief to which XM has agreed.  Rather, Class Counsel's requested fee is limited to one-third of the actual payments that XM is making directly for the benefit of the Settlement Classes.[5]

As set forth below, the requested fee is thoroughly supported by each of the six "*Goldberger*" factors (see I.B. *infra*) and is fair and reasonable under both the "percentage of the fund" and the "lodestar" methods used by courts in the Second Circuit to award attorneys' fees in common fund cases.  See I.C. and I.D. *infra*.

### A.    The Established Methods of Determining The Amount of Attorneys' Fees In Common Fund Cases

---

[5] Pursuant to the Settlement Agreement, Class Counsel reserved the right to make a separate request for fees relating to their work in connection with the administration of the Settlement Funds.  See Settlement Agreement ¶76.  At this time, it is not anticipated that such a request will be made unless the amount of time required to administer and allocate the Settlement Funds becomes substantial.

However, after the settlement administration process has been completed and Class Counsel have learned how many additional devices have been activated during the Term, Class Counsel will determine whether to make a separate application for all or a portion of their professional services rendered in connection with the settlement administration process.

In the Second Circuit, district courts may award attorneys' fees in common fund cases under either the "lodestar" method or the "percentage of the "fund" method. *Goldberger,* 209 F.3d at 50.

The favored method in the Second Circuit has been the percentage of the fund method with court's using the lodestar method as a "cross check."  See *e.g., Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) ("*Wal-Mart*") (nothing the trend toward a percentage of the fund approach in determining attorneys' fee awards in common fund cases). Under the percentage of the fund method, the court awards a fee based on a percentage of the common fund.  *Id*.  The percentage of the fund method is preferred, in part, because of its "…ease of administration, permitting the judge to focus on 'a showing that the fund conferring a benefit on the class resulted from the lawyers' efforts' rather than collateral disputes over billing…"  *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 485 (S.D.N.Y. 1998). Plaintiffs respectfully submit that the Court should examine the reasonableness of the fee request herein using a percentage of the fund analysis based on the increasing dominance of that approach and its overall efficiency compared to the lodestar method.[6]

The less favored method for determining the fairness and reasonableness of the fees requested by counsel in a common fund case is the lodestar method.  See *e.g., In re Sumitomo Copper Litig.*, 74 F.Supp. 2d at 397("Courts increasingly have come to recognize the shortcomings of the lodestar/multiplier method…").  Under the lodestar method, the court reviews the fee petition in order to ascertain the number of hours reasonably billed to the class and then multiplies that figure by an appropriate hourly rate in order to arrive at the "lodestar."

---

[6] "At least eight other circuits—the First, Third, Sixth, Seventh, Ninth, Tenth, Eleventh and District of Columbia Circuits—have affirmatively approved the percentage-of-recovery method as an appropriate method for determining attorneys' fees."  *In re Sumitomo Copper Litig.*, 74 F.Supp. 2d 393, 397 (S.D.N.Y. 1999).

*Wal-Mart,* 396 F.3d at 121.  Additionally, the district court may, in its discretion, increase the

lodestar based on factors such as the risk of the litigation and the performance of the attorneys.

*Id*.

**B.     The Requested Fee Is Fair and Reasonable Based On All Six "*Goldberger*"
        Factors**

No matter which method is chosen, the reasonableness of a common fund fee award is

governed by the following six "*Goldberger*" factors:

> (1) the time and labor expended by counsel; (2) the magnitude and complexities
> of the litigation; (3) the risk of the litigation ...; (4) the quality of representation;
> (5) the requested fee in relation to the settlement; and (6) public policy
> considerations.

*Goldberger*, 290 F.3d at 50.  As set forth below, the fees requested in this case are fair and

reasonable based on all six *Goldberger* factors.

**1.     "The Time And Labor Expended By Counsel"**

The first factor for determining whether a fee is reasonable is "the time and labor

expended by counsel."  *Id*.  In total, Class Counsel has spent 3,458.56 hours of attorney and

litigation support time prosecuting this action.  See McGrath Declaration ¶17.  This time has a

lodestar value of $1,616,833.83.  *Id*.

As detailed in the McGrath Declaration and Exhibits 2-4 thereto, Class Counsel have

expended significant time and effort since May 2007 in order to bring this litigation to a

successful resolution.  See McGrath Declaration ¶5 and Exhibits 2-4.  Class Counsel's efforts

include, for example:  extensive arm's-length negotiations that ultimately led to the Settlement

herein, reviewing and analyzing XM's 5.7 million page document production, inspecting and

copying the contents of Recording Devices of a dozen XM executives and employees, consulting

with various industry and economic experts, collaborating with music industry participants in

order to formulate a compressive notice plan, drafting document requests, interrogatories and third party subpoenas, and engaging in numerous meet and confers concerning discovery disputes. *Id*.

### 2.    "The Magnitude And Complexities Of The Litigation"

The second *Goldberger* factor—the magnitude and complexity of the case—also heavily supports the requested fee award in this case. *Goldberger*, 209 F.3d at 50.

The magnitude of this case, in terms of both the potential size of the Classes and the potential number of infringements at issue, is enormous. Notice of the Settlement was provided to 64,350 potential members of the Classes across two separate industries (*i.e.*, the recording and publishing industries). The potential number of infringements spanning over four years and dozens of XM satellite radio channels broadcasting music non-stop is massive. Complaint ¶¶34, 42. Indeed, the magnitude of the case is demonstrated by the fact that XM produced over 5.7 million pages of documents and vast amounts of data during discovery.

In terms of complexity, this action presented novel and complex issues involving duplication and distribution of satellite radio broadcasts and the functionalities of portable satellite radio receives (*i.e.*, the Recording Devices). *E.g.*, Complaint ¶¶55-58. Indeed, the undersigned are unaware of any copyright infringement case involving satellite radio broadcast outside of the consolidated actions herein. Considering the magnitude and complexity of this case, the requested fee is fair and reasonable.

### 3.    "The Risk Of The Litigation…"

The Second Circuit has identified "…the risk of success as 'perhaps the foremost' factor to be considered in determining…" a reasonable fee award. *Goldberger*, 209 F.3d at 54.

#### a.    Risk of Non-Payment

Class Counsel diligently and vigorously prosecuted this case for three and one-half years on an entirely contingent fee basis, without receiving a penny of reimbursement.  The risk of non-payment was very real, both due to the risks of proving the merits and the risks reflected in news media reports that XM's parent company, Sirius XM, was preparing for a possible bankruptcy filing.  See, *e.g.*, Andrew Ross Sorkin and Zachery Kouwe, *Sirius XM Prepares for Possible Bankruptcy*, N.Y. Times, February 10, 2009.  Because the fee to be awarded in this matter is entirely contingent, the only certainty was that there would be no fee without a successful result and, even then, XM might not have been able to pay.

### b.      Risks of Certifying the Settlement Classes

Although the undersigned believe that the Classes herein satisfied all the necessary prerequisites of Rule 23 and would have been certified, class motions in cases of this magnitude are heavily contested and would have likely involved expert testimony from both sides. Accordingly, Plaintiffs also bear the risk of class certification and, even if successful, withstanding interlocutory appeal under Rule 23(f).

### c.      Risks of Establishing Liability

First, Plaintiffs had the burden to prove the elements of their claims.  Second, XM asserted various defenses, including ten separate affirmative defenses, and a jury trial might well turn on close questions of proof making the outcome of such trial uncertain for both parties. Moreover, due to the technical aspects of XM's satellite radio service and the functionalities of XM's Recording Devices, many issues would likely devolve into a "battle of the experts" at a trial.

Despite the foregoing risks, Class Counsel zealously represented the Settlement Classes and secured a substantial recovery for their benefit.  The foregoing risks speak to the fairness and reasonableness of the requested fee.

### 4.      "The Quality Of Representation"

The fourth factor cited by the Second Circuit is the "quality of representation" delivered by the litigation.  *Goldberge*r, 209 F.3d at 50.  To evaluate this factor, courts in the Second Circuit have "review[ed] the recovery obtained and the background of the lawyers involved in the lawsuit.  *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 141 (S.D.N.Y. 2008).

As described above, the recovery obtained by Class Counsel herein is significant.  See I *infra*.  With respect to the background of the lawyers involved, Lovell Stewart Halebian Jacobson LLP has obtained the largest class action recovery under three separate federal statutes. See McGrath Declaration Exhibit 1 at p. 1.  The other Class Counsel herein posses extensive experience in complex copyright infringement actions.  See McGrath Declaration Exhibits 2A, 3A and 4A (attaching resumes of Class Counsel).

Another consideration for assessing the quality of the services rendered is the quality of the opposing counsel in the case.  See *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 358, 373 (S.D.N.Y. 2002).  In this action, XM was represented by highly experienced counsel at Cooley LLP and Kramer Levin Naftalis & Frankel LLP.  See Docket Nos. 16-20, 114-115.

### 5.      "The Requested Fee In Relation To The Settlement"

Counsel here request a fee equal to one-third of the common fund (excluding the administrative expenses) plus interest.  In this Circuit, courts have frequently awarded attorneys' fees constituting one-third of a common fund.  *In re Prudential Securities, Inc. Ltd. Partnerships*

*Litig.*, 912 F.Supp. 97, 103 (S.D.N.Y. 1996) ("[m]any courts have approved and awarded fees in

class actions of one-third of the settlement fund in recognition of the substantial services

performed by counsel and the risks undertaken. ").[7]  Moreover, Class Counsel's work herein

created additional benefits for the Settlement Classes such that the requested fee represents

significantly **less** than one-third of the benefits conferred.  See p.1, fn. 2 *supra*.

In light of the foregoing authority and the substantial additional benefits that Class

Counsel's work has bestowed upon the Settlement Classes, this *Goldberger* factor supports the

requested fee.

### 6.     "Public Policy Considerations"

Public policy considerations strongly favor the requested fee award.  The drafters of the

United States Constitution recognized the need to protect intellectual property so as to

---

[7] See also, *e.g., Maywalt v. Parker & Parsley Petroleum Co.*, 963 F. Supp. 310, 313 (S.D.N.Y. 1997) (awarding 33.4% of common fund), *aff'd*, 145 F.3d 513 (2d Cir. 1998); *Frank v. Eastman Kodak*, 228 F.R.D. 174 (W.D.N.Y. 2005) (awarding 40% of common fund); *Hicks v. Morgan Stanley*, 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) (awarding 36% of common fund); *Spann v. AOL Time Warner*, 02 Civ. 8238 (DLC), 2005 WL 1330937 (S.D.N.Y. Jan. 7, 2005) (awarding 33.3% of common fund); *Maley v. Del Global Technologies Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (awarding 33.3% of common fund); *Lemmer v. Golden Books Family Entm't, Inc.*, No. 98 Civ. 5748 (S.D.N.Y. Oct. 12, 1999) (awarding fee of one third settlement fund); *In re MTC Elec. Techs. Shareholder Litig.*, Master File No. 93-CV-0876, MDL No. 1059 (E.D.N.Y. Oct. 16, 1998) (awarding 33-1/3% of the settlement amount); *In re Baesa Sec. Litig.*, 96 Civ. 7435 (S.D.N.Y. Oct. 8, 1998) (awarding 33-1/3% of the settlement amount); *In re Medical X-Ray Film Antitrust Litig.*, CF 1998 WL 6615151 (E.D.N.Y. 1998) (awarding one-third of the settlement fund); *In re Porta Sys. Corp. Sec. Litig.,* Master File No. 93 Civ. 1453 (E.D.N.Y. June 18, 1996) (awarding one-third of the settlement fund); *Michaels v. Ambassador Group, Inc.,* CV 84-2455 (E.D.N.Y. June 3, 1996) (awarding 35% of the settlement fund); *Dubin v. E.F. Hutton & Co.,* 878 F. Supp. 616 (S.D.N.Y. 1995) (one-third fee award); *In re PaineWebber Sec. Litig.,* Civ. A. No. B-85-617 (D. Conn. Sept. 8, 1994) (fee awarded was one-third of the settlement); *In re Crazy Eddie Sec. Litig.,* 824 F. Supp. 320 (E.D.N.Y. 1993) (33.8% of $42,000,000 settlement fund); *In re Presidential Life Sec.,* 857 F. Supp. 331 ( S.D.N.Y. 1994)  (awarding $14.2 million in fees or 33.81% of a $42 million settlement fund); *Cohen v. Apache Corp.*, No. 89 Civ. 0076, 1993 WL 126560 (S.D.N.Y. Apr. 21, 1993) (fee of 33.33%); *Green v. Emersons, Ltd.,* No. 76 Civ. 2178, 1987 WL 11558 (S.D.N.Y. May 20, 1987) (awarding fees of 33 1/3% of settlement fund); *In re Franklin Nat'l Bank Sec. Litig.,* [1980 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 97,571 at 97,988 (E.D.N.Y. June 24, 1980) (fee awarded was 34% of settlement).

"…promote the Progress of Science and the useful Arts…"  See United States Constitution, Article 1, Section 8.  The Settlement herein furthers this important public policy by protecting the rights of artists and thereby encouraging and stimulating the creativity of such artists for the enrichment of the general public.

Second, the relatively small claims of many of the members of the Settlement Classes here, when taken separately, would not justify the expense of litigation.  In such circumstances, courts in this Circuit have recognized that "[p]rivate attorneys should be encouraged to take the risks required to represent those who would not otherwise be protected from socially undesirable activities..."  *Maley v. Del Global Technologies Corp.,* 186 F. Supp. 2d 358, 374 (S.D.N.Y. 2002).  However, as a practical matter, lawsuits like this one can be maintained only if competent counsel can be obtained to prosecute them.  This will occur if courts award reasonable and adequate compensation for counsel's services where successful results are achieved.  See *In re Union Carbide Corp. Consumer Prod. Business Sec. Litig.*, 724 F. Supp. 160, 169 (S.D.N.Y. 1989) ("[a] large segment of the public might be denied a remedy for violations of the securities laws if contingent fees awarded by the courts did not fairly compensate counsel for the services provided and the risks undertaken.").

In sum, all six *Goldberger* factors establish the fairness and reasonableness of the requested fee.

**C.     The Requested Fee Is Fair and Reasonable Under A Percentage of the Fund Analysis**

Under the preferred percentage of the fund method, courts award a fee based on a percentage of the common fund.  See II.A. *infra*.  As reflected in the cases collected in fn. 7 above, there is ample support in this Circuit for an award of attorneys' fees constituting one-third of a common fund.

In fact, courts in this Circuit have found one-third fees to be fair and reasonable even where, **unlike here**, the one-third fee resulted in a significant lodestar multiplier.  See *e.g.*, *In re Buspirone Patent Litigation*, No. 01-MD-1410, slip op. at 41-43 (S.D.N.Y. Apr. 17, 2003) (approving a fee request of 33.3% of the $220,000,000 common fund that resulted in a lodestar multiplier of 8.46).  Indeed, the Second Circuit has previously found that lodestar multipliers as high as 3.5 are fair and reasonable.  See *e.g.*, *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396, F.3d 96, 123 (2d. Cir. 2005) (affirming lodestar multiplier or of 3.5).  In fact, "…multipliers of between 3 and 4.5 have become common…" in the Second Circuit.  *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 (S.D.N.Y. 1998); see also *In re Lloyd's Am-Trust Fund Litig.*, 2002 U.S. Dist. LEXIS at 79-81 (S.D.N.Y. 2005) (risk multiplier of 2.09 is at the "…lower end of the range of multipliers awarded by courts within the Second Circuit…").

In sum, the requested one-third fee is consistent with what has previously been found to be fair and reasonable in numerous other cases in this Circuit even in instances where such an award resulted in a significantly higher lodestar multiplier than the nominal 1.01 lodestar multiplier currently present here.

> **D.     The Requested Fee is Fair and Reasonable Under The Lodestar "Cross Check" And The Lodestar Method Generally**
>
> > **1.     The Requested Fee is Also Reasonable Under the Lodestar "Cross Check"**

Some courts using the percentage of the fund method still use the lodestar method "as a 'cross check' on the reasonableness of the requested percentage."  *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 4223, 436 (2d Cir. 2007).  Application of the lodestar cross-check here results in a nominal lodestar multiplier of 1.01 (which represents less than $17,500).  This

nominal multiplier of 1.01 is well below the range of lodestar multipliers in the Second Circuit. See II.C. above.

Also, pursuant to the Merlin Agreement previously submitted to the Court [Docket No. 109, Exhibit 1-J], Class Counsel has agreed to share a maximum of $304,000 of their fees herein with Merlin[8] in consideration for Merlin's efforts in helping to achieve the Settlement for the benefit of the Sound Recording Settlement Class.  See Docket No. 109, Exhibit 1-J (Merlin Agreement) at ¶2.  The value of Merlin's time spent on behalf of its members who are members of the Sound Recording Settlement Class exceeds the maximum of $304,000 in fees that Class Counsel have agreed to provide Merlin pursuant to the terms of the Merlin Agreement.[9]  See McGrath Declaration ¶20.  This will effectively result in a negative multiplier for Class Counsel even if the requested one-third fee is awarded.

> **2.     The Requested Lodestar Multiplier of, So Far, 1.01 Will Be A Negative Risk Multiplier By The Time of The Fairness Hearing; This Is A Fair Risk Multiplier and Is Well Below Lodestar Multipliers Deemed To Be Fair and Reasonable In This Circuit**

Under the lodestar method, courts review the fee petition in order to ascertain the number of hours reasonably billed to the class and then multiplies that figure by an appropriate hourly rate.  *Id*. at 416.  Courts applying the lodestar method will generally apply a multiplier to the lodestar to take account of the contingent nature of the fee, the risks of non-payment, the quality of the representation and the result achieved.  *Wal-Mart,* 396 F.3d at 121.

---

[8] Merlin is a non-profit organization that represents the interests of a significant number of members of the Sound Recording Settlement Class.  See Docket No. 108 at pp. 10-11 (detailing Merlin's participation in this action).

[9] Merlin's general counsel, Charlie Lexton, and Merlin's outside counsel, Eric German, have submitted declarations attesting to their time spent on behalf of the members of the Sound Recording Settlement Class herein and their expenses reasonably incurred as a result thereof. See McGrath Declaration Exhibits 4-5.

In the event that the Court applies the lodestar method, Class Counsel respectfully submits that the current nominal lodestar multiplier of 1.01 is justified for all the reasons set forth in the discussion of the *Goldberger* factors in "II.B" above.  The 1.01 lodestar multiplier here is well below the range of lodestar multipliers in the Second Circuit.  See II.C *supra.* Moreover, Class Counsel anticipate that due to their continued work during the administration and claims process, the current 1.01 lodestar multiplier will become a **negative** lodestar multiplier (*i.e.*, Class Counsel's lodestar will exceed the requested fee) by the time of the March 22, 2011 fairness hearing.  See *Retsky Family Ltd. P'ship*, 2001 WL 1568856 at *4 (fact that lodestar was higher than requested 33⅓% fee "suggests that one-third of the common fund is a reasonable attorneys' fee").

As set forth in "a" and "b" below, the number of hours billed by Class Counsel and their billing rates are reasonable.

### a.      Class Counsel's Hours Are Reasonable

The first step under the lodestar method is to determine whether the number of hours devoted by counsel are reasonable.  *In re Prudential,* 985 F.Supp. at 416.

Here, Class Counsel spent a total 3,458.56 hours prosecuting this action for the benefit of the Settlement Classes.  See McGrath Declaration ¶17.  Approximately 80% of Class Counsel's total hours are attributable to three attorneys (*i.e.*, Christopher M. McGrath, Steven J. D'Onofrio and Jeffrey L. Graubart).  See McGrath Declaration ¶¶6, 17.  These three attorneys each had different areas of expertise and worked together efficiently without duplicating efforts.  Given the magnitude of the case and its duration, the time Class Counsel spent prosecuting this action on behalf of the Settlement Classes is more than reasonable.

### b.      Class Counsel's Hourly Rates are Reasonable

The second step of the lodestar analysis is hourly rate.  *In re Prudential,* 985 F.Supp. at 416.  The hourly billing rate to be applied is the hourly rate that is normally charged in the community where the counsel practices, *i.e.*, the "market rate."  *See Blum v. Stenson*, 465 U.S. 886, 895 (1984).  In addition, the Supreme Court and the Second Circuit have held that the use of *current* rates is proper since such rates more adequately compensate for inflation and loss of use of funds.  *Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1984); *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1153 (2d Cir. 1983).

The current hourly rates of Class Counsel are reflected in the McGrath Declaration and the Exhibits thereto.  See McGrath Declaration ¶6, Exhibit 2 ¶7, Exhibit 3 ¶7 and Exhibit 4 ¶7.  Class Counsel's hourly rates are the competitive market hourly rates in their respective legal communities for cases of this sort and are the same regular current rates charged for their services in non-contingent matters and/or which have been accepted and approved in other complex class action litigation.  See also McGrath Declaration ¶9 (summarizing ranges of hourly billing rates at New York law firms referenced in the National Law Journal's 2010 Billing Survey).  Class Counsel's hourly rates necessarily reflect the reputation, experience, care, and success records of Class Counsel.  No time spent by Class Counsel in the preparation of this fee petition is included herein.  See McGrath Declaration ¶6.

## III.    THE REQUESTED REIMBURSEMENT OF EXPENSES IS REASONABLE AND SHOULD BE APPROVED

Reimbursement of expenses to counsel whose efforts created a common fund are generally granted "as a matter of course."  See *e.g.*, *Arakis Energy Corp. Sec. Litig.*, 2001 WL 1590512 at *17 (E.D.N.Y. Oct. 31 2001) ("Courts in the Second Circuit normally grant expense requests in common fund cases as a matter of course").

From the beginning of the case, Class Counsel were aware that they might not recover any expenses and, at the very least, would not recover anything until the action was successfully resolved. Thus, Class Counsel were motivated to, and did, take significant steps to mitigate expenses wherever practical without jeopardizing the vigorous and efficient prosecution of the case.

Class Counsel respectfully requests reimbursement of $179,055.16 in expenses reasonably incurred while prosecuting this action. The requested reimbursement amount includes $6,700 in expenses reasonably incurred by Merlin. See McGrath Declaration Exhibit 4 at ¶9. Class Counsel's and Merlin's expenses are detailed in the McGrath Declaration and the Exhibits thereto. See McGrath Declaration ¶¶11, 17, Exhibit 2 at ¶9, Exhibit 3 at ¶9 and Exhibit 4 at ¶9.

The overwhelming majority of Class Counsel's expenses are for payments to contract attorneys ($136,433.31) and experts ($11,750). *Id.* In fact, approximately 80% of Class Counsel's total expenses are directly attributable to retaining the services of contract attorneys to review XM's 5.7 million page document production. *Compare* McGrath Declaration ¶11,17 *with* Transcript of March 19, 2008 Conference, at p. 5 (XM hired approximately **sixty** contract attorneys to review potentially responsive documents prior to production to Plaintiffs). In order to review XM's document production efficiently, Class Counsel hired these contract attorneys to review, in the Los Angeles, California offices of Gibson Dunn[10], with attorneys from that firm, XM's voluminous document production. Together, these attorneys created an index to XM's document production which was used by Class Counsel.

---

[10] Gibson Dunn was counsel for plaintiffs in the related action *Famous Music, LLC et al. v. XM Satellite Radio, Inc.*, 07-cv-02835 (S.D.N.Y.) (LAK). Cynthia Arato of Gibson Dunn was the lead attorney for the plaintiffs in the *Famous* action.

The remaining requested expenses were also reasonably incurred in the prosecution of this action and are detailed and categorized in the McGrath Declaration and the exhibits thereto. See McGrath Declaration ¶11, Exhibit 2 ¶9, Exhibit 3 ¶9 and Exhibit 5 ¶9.

## IV.   THE REQUESTED INCENTIVE AWARDS FOR THE CLASS REPRESENTATIVES ARE FAIR AND REASONABLE

It is well settled that class representative plaintiffs in successful class actions are entitled to incentive awards so as to "…compensate the named plaintiff for any personal risk incurred . . . or any additional effort expended . . .  for the benefit of the lawsuit." *Berrios v. Sprint Corp.,* 97-0081, 1998 WL 1749828, at *3 (S.D.N.Y. Sept. 11, 1998).

The eleven named Plaintiffs[11] respectfully request incentive awards in the amount of $12,500 to compensate them for their time, expenses, and burdens they have incurred during the almost four years of preparing for and prosecuting this litigation.  The requested $12,500 incentive award is consistent with at least two prior copyright infringement class action settlements.  See *Steiner, et. al. v. ABC, Inc., et al.*, Case No. CV-00-5798 (FMC) (C.D. Cal.) (approving incentive awards of $12,500 for the class representative plaintiffs in connection with the settlement of a copyright infringement class action) and *The Music Force LLC, et al. v. Viacom, Inc. et al.*, Case No. CV04-8239 (ER) (C.D. Cal.) (same).

During the course of this litigation, the Plaintiffs furthered the prosecution of this action on behalf of the Settlement Classes by, among other things, aiding the preparation of the

---

[11] "Plaintiffs" refers to: (1) Cartagena Enterprises, Inc., also doing business as Cartagena Publishing; (2) David Grisman, doing business as Dawg Music, and also doing business as Acoustic Disc; (3) Craig Miller, doing business as Dawg Music, and also doing business as Acoustic Disc; (4) HMS Distributors, Inc., also doing business as J & N Records and doing business as J & N Publishing; (5) JVN Music, Inc., also doing business as JVN Records; (6) The Music Force LLC, also doing business as Full Force Music; (7) The Music Force Media Group, LLC; (8) Musical Productions, LLC; (9) On Top Records Corp., also doing business as Still On Top Publishing and doing business as Real Smooth Publishing; (10) Platano Records Corp.; and (11) RICO Records Distributing, Inc.

complaint and amended complaints, providing Rule 26(a)(1) disclosures, responding to

interrogatories, producing documents in response to Defendant's requests for production and

otherwise assisting Class counsel in analyzing the claims, defenses and issues in this action.  See

McGrath Declaration ¶¶14-15.

## CONCLUSION

For all the foregoing reasons, Class Counsel's requests for (1) an award of attorneys' fees

in the amount of one third of the common fund (excluding the administrative expenses) plus

interest; (2) reimbursement of $179,055.16 in expenses reasonably incurred in the prosecution of

this action; and (3) incentive awards in the amount of $12,500 for each of the class representative

Plaintiffs should all be granted as reasonable and fair to the Settlement Classes.

Dated:  New York, New York
        February 22, 2011

Respectfully submitted,

*/s/ Christopher Lovell*
Christopher Lovell  (CL-2595)
Christopher M. McGrath  (CM-4983)
**LOVELL STEWART HALEBIAN JACOBSON LLP**
61 Broadway, Suite 501
New York, New York 10006
Telephone:     (212) 608-1900
Facsimile:     (212) 719-4775

*/s/ Jeffrey L. Graubart*
Jeffrey L. Graubart (JG-1338)
**LAW OFFICES OF JEFFREY L. GRAUBART, P.C.**
350 West Colorado Boulevard, Suite 200
Pasadena, California 91105-1855
Telephone:     (626) 304-2800
Facsimile:     (626) 304-2807

*/s/ Joshua Graubart*
Joshua Graubart (JG-6791)
**LAW OFFICES OF JOSHUA GRAUBART, P.C.**
237 E. 28th Street, Suite 1D

18

New York, New York 10016
Telephone:     (646) 781-9321
Facsimile:     (646) 224-8088

_/s/ Steven J. D'Onofrio_____
Steven J. D'Onofrio, Esq. (SD-8794)
5335 Wisconsin Avenue, N.W. Suite 950
Washington, D.C. 20015
Telephone:     (202) 686-2872
Facsimile:     (202) 686-2875

**Counsel for Plaintiffs & the Settlement Classes**